<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY WESTON, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civ. No. 08-1247 (DRD) <br><br> **O P I N I O N** |

*Appearances by:*

PATRICIA M. FRANKLIN
by: Patricia M. Franklin, Esq.
81 Halsey Street
P.O. Box 32207
Newark, NJ 07102

    *Attorneys for Plaintiff*

CHRISTOPHER J. CHRISTIE
UNITED STATES ATTORNEY for the District of New Jersey
by: John M. Kelly
Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY 10278

    *Attorney for Defendant*

**<u>DEBEVOISE</u>, Senior District Judge**

Pursuant to § 205(g) of the Social Security Act ("the Act"), Plaintiff, Judy Weston ("Plaintiff"), seeks this Court's review of the Commissioner of Social Security's ("Commissioner") final determination that Plaintiff is not disabled, and therefore not entitled to Social Security Disability (SSD) or Supplemental Security Income (SSI) benefits. Plaintiff seeks reversal of the Commissioner's decision on two grounds: First, the Administrative Law Judge, the Honorable Joel Friedman, ("ALJ") failed to base his denial of Plaintiff's disability claims on substantial evidence, and second, that the ALJ erred as a matter of law in denying those benefits. For the reasons set forth below, the Commissioner's decision will be affirmed.

## I. BACKGROUND

Plaintiff is a 58-year-old female with an 11th grade education (R. 19, 88) alleging the following ailments: asthma, carpal tunnel in the right-hand, plantar fascitis, Hepatitis C, high-blood pressure, and complaining of pain in her heels and joints in the leg. (R. 23-24, 63-65, 82, 430, 653-655). She claims disability for the period between August 9, 2002 through April 30, 2004. (R. 20). Plaintiff's jobs prior to the disability period were file clerk at a mailing service, passenger screener and wheelchair transporter at Newark Airport and security guard. (R. 28, 132). After the disability period, she worked as a security guard, a job that constituted a substantial gainful activity level. (R. 20). Her earning record, although low, was consistent for a period of 10-years leading up to the beginning of the disability period when Plaintiff was discharged from employment as an airport security screener because her employer lost its services contract. (R. 19, 66). After being discharged as an airport security screener, Plaintiff testified that she collected unemployment benefits, suffered a period of disability but later returned to work. (R. 19-20).

Plaintiff filed an application for Disability Insurance Benefits on February 13, 2003 based upon the ailments and complaints noted above. (R. 63). Her application for Disability Insurance Benefits was denied initially and upon reconsideration. (R. 35, 41). Plaintiff then requested and was granted a hearing before an ALJ, and appeared before the ALJ with counsel on November 17, 2004. (R. 18). The ALJ heard testimony from the Plaintiff regarding her history of ailments, and considered medical evidence submitted by the Plaintiff. (R. 18). The ALJ left the hearing record open to consider additional medical evidence that was to be gained from a post-hearing consultative examination. (R. 703).

In his decision, the ALJ recounted Plaintiff's extensive medical record, giving a comprehensive account of the multiple medical diagnoses and treatments before, during, and after the contested period. (R. 20-28). These visits resulted in a sizeable medical record spanning a six-year period and approximately 18 visits to medical providers (not including seven appointments for diagnoses or occupational therapy treatment missed by Plaintiff with no explanation of her failure to keep the appointments). (R. 178, 188, 211, 215, 247, 254-255). The ALJ considered each of these medical visits and described them in relevant part, noting that since 1998, Plaintiff has received medical treatment for her ailments and was provided with an abundance of prescription drugs to treat or alleviate discomfort associated with those ailments. (R. 20). Plaintiff complained of and received diagnoses and treatment of the following:

Heel and leg pain: The ALJ recounted that beginning in 1999 Plaintiff made numerous visits to the emergency room and medical treatment providers for her most substantial complaint of pain: to seek orthopedic treatment for her heel pain. (R. 20). This pain was a major factor in her disability benefits claim, as the alleged pain limits her ability to walk. (R. 157, 220). These

visits to medical providers resulted in a diagnosis of plantar fascitis, prescriptions to alleviate pain and a referral to physical and occupational therapy. (R. 20). The ALJ also noted Plaintiff's frequent failure to adhere to physical therapy appointments and regimen, resulting in her discharge from physical therapy. (R. 20). Despite Plaintiff's failure to adhere to physical therapy, during subsequent medical visits in 1999 Plaintiff reported improvement in her heel and leg pain. (R. 20-20). In late 2001, she again sought treatment for leg pain, this time associated with her ankles. The attending physician noted that Plaintiff suffered from pain in the soles of her feet, but also determined that Plaintiff's plantar fascitis was improving on Neurontin, renewed the prescription and again referred Plaintiff for physical therapy. (R. 21, 244-246). Plaintiff complained that Neurontin upset her stomach and so she did not adhere to the prescription plan. Plaintiff again failed to attend her physical therapy appointments. (R. 21, 188, 247, 254, 255). Subsequent visits to medical providers and disability related consultative examiners produced reports that Plaintiff's gait and station appeared normal and that she had full motion of her legs. However, Plaintiff continued to complain of pain in her heel and legs. (R. 21, 269, 377-379, 497).

Wrist and arm pain: in September 2000, Plaintiff complained of wrist and arm pain that sometimes radiated to her neck, and was prescribed a wrist splint and physical therapy. (R. 21, 170). Almost a year later, Plaintiff went for a follow-up visit for her wrist and hands, and reported continued pain, developing to a tingling in her fingers. (R. 21, 242-243). The diagnosing physician reported positive Finkelstein's and Tinel's signs, referred the Plaintiff to EMG studies and physical and occupational therapy, and provided her with a thumb spica splint and prescribed medication to alleviate the pain. (R. 21, 241-243). It is unclear from the record

whether the numerous missed physical and occupational therapy appointments were for Plaintiff's wrist and arm pain, or related to her leg pain.

Other ailments: Plaintiff appears to suffer from Hepatitis B (R. 21-24, 183-190, 349) and C. (R. 364-365). Although no diagnoses note both forms of Hepatitis simultaneously, tests indicate the presence of both forms and physicians refer individually to either Hepatitis B or C. In late 2001, Plaintiff was diagnosed with Hepatitis B, but was diagnosed as asymptomatic with regards to Hepatitis B and was referred for an ultrasound of the liver. (R. 21, 285-287). Plaintiff also reported suffering from asthma and was prescribed an emergency inhaler to alleviate any shortness of breath. (R. 376, 377).

Plaintiff underwent two consultative medical examinations, first at the request of Disability Determination Services, and then at the request of the ALJ. The reports following independent medical examinations concluded that: First, on May 29, 2003 (approximately in the middle of the disputed disability period) Dr. Alan Plauka examined the Plaintiff and reported that she can care for herself (e.g., dressing herself, shopping), had high blood pressure, her gait and stance were normal, and could walk on her heels and toes without difficulty. (R. 23, 376-383). Dr. Plauka diagnosed Plaintiff with back pain, asthma, history of numbness in the arms and legs, hypertension, and opined in the medical sources statement that she was mildly limited in prolonged standing, walking and bending, and because of Plaintiff's asthma, should avoid smoky environments or irritants. (R. 387). Second, after the hearing at which Plaintiff testified, in order to obtain a more recent depiction of Plaintiff's physical condition, the ALJ ordered that she be examined by Dr. Salvatore Milazzo, an independent medical expert. This second consultative examination took place on January 21, 2005, approximately six months after the end of the

5

disputed disability period. Plaintiff continued her complaints of pain when walking, as well as in her hands when in use. Dr. Milazzo noted some of Plaintiff's contradictory accounts (e.g., Plaintiff reported that she was unable to sit for more than 4-5 minutes, but had already sat for much longer when making that complaint), and, most crucially, Plaintiff failed to inform Dr. Milazzo that at the time of his examination she was working in a position where she was on her feet eight hours per day. Dr. Milazzo determined that Plaintiff walked without any limp, her pace was normal, her spine showed functional range of motion, and Plaintiff exhibited functional range of motion in her shoulders and upper extremities. (R. 496-504). In his Medical Source Statement, Dr. Milazzo opined that Plaintiff was limited to occasionally lifting 10 pounds, standing or walking for at least 2 hours in an 8-hour workday, and sitting for 6 hours in the same period with allowances for periodically alternate sitting and walking. Further, that because of Plaintiff's asthma, she should avoid dusty environments. The ALJ considered these independent examinations in his decision. (R. 22-28).

After considering the medical evidence and the hearing testimony, the ALJ issued a detailed opinion denying Plaintiff's request for Disability Insurance Benefits for the period of disability. (R. 31). In the course of his opinion the ALJ concluded that Plaintiff's "subjective complaints of disabling pain, mental distress, and other symptoms and limitation precluding all significant work activity are not fully credible. . ." (R. 27). He set forth his reasons for this credibility determination. For example, "[a]t the hearing, the claimant testified that she was able to walk only a block or a block and a half, but then she testified that she walked 8 hours a day in her current job." (R. 28).

The ALJ explained his limited reliance on Dr. Milazzo's report: "Although Dr. Milazzo

6

assessed her with a residual functional capacity for sedentary work (Exhibit 19F), it is noted that claimant never told Dr. Milazzo that she was working on her feet 8 hours a day. . . I find, more valid, the assessed residual functional capacity for light work, as determined by the Disability Determination Services (DDS), as well as the opinion of the original consultative examiner, Dr. Plauka." (R. 28). The ALJ also noted Plaintiff's non-compliance with physical and/or occupational therapies and with instructions for medication. (Id.). Referring to evidence of back and hand/feet pain, the ALJ cited the fact that Plaintiff was able to continue working and that, among other things, "there are no radiographic or clinical findings which would come close to support the degree of inability alleged." (R. 29).

The ALJ, on the basis of the evidence, found, as concluded by the State medical consultants, that Plaintiff retained the residual functional capacity to perform light work. (Id.). As to Plaintiff's ability to perform past relevant work, the ALJ found that her past relevant work as an airport security screener and wheelchair work at the airport was heavy exertional work but that nothing in the record precluded her from doing the work she was currently doing as a security guard. (R. 29). The ALJ stated "I find that the claimant could return to her past relevant work as file clerk; security guard; and to her past work as an airport security screener as described in the Dictionary of Occupational Titles (DOT), (airport security screeners - light work #372.667-010)." (R. 30).

The formal findings of the ALJ included the following:

> 2. The claimant did not engage in substantial gainful activity from the alleged onset of disability until May 2004. As of May 2004, the claimant returned to substantial gainful activity.
>
> 3. The claimant's plantar fascitis, hepatitis C; and asthma are considered "severe"

7

    based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

    4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

    5.  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

    6.  The claimant has retained the residual functional capacity to perform light work activity in an environment free of preliminary irritants.

    7.  The claimant's past relevant work as airport security screener, file clerk and security guard did not require the performance of work-related activities precluded by her functional capacity (20 CFR §§ 404.1565 and 416.965).

    8.  The claimant's medically determinable plantar fascitis; hepatitis C; and asthma do not prevent the claimant from performing her past relevant work.

    9.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520 (f) and 416.920(f).

(R. 30).

Plaintiff timely appealed the ALJ's decision to the Social Security Administration's Appeals Council which denied her request, and thereby made the ALJ's decision the final decision of the Commissioner. (R. 6-8). From this denial, as the final decision of the Commissioner, Plaintiff now appeals.

## II. DISCUSSION

The only issue before the Court is whether the Commissioner's decision to deny Plaintiff's application for Social Security Disability (SSD) or Supplemental Security Income (SSI) benefits is supported by substantial evidence. Plaintiff asserts that the ALJ's conclusions as to Plaintiff's performance of past relevant work is not supported by substantial evidence, and

that the ALJ's assessment of Plaintiff's subjective complaints of pain was erroneous. The court concludes that the ALJ's findings as to Plaintiff's ability to perform past relevant work (with one exception) and regarding Plaintiff's subjective complaints of pain are supported by substantial evidence. The ALJ's decision will be affirmed.

### A. Standard of Review

A district court's review of the Commissioner's factual conclusions is deferential and limited to determining whether the conclusions are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A district court is bound by the Commissioner's factual findings that are supported by substantial evidence, even if the district court would have reached a different factual conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). This is so because the question is whether the record, read as a whole, yields such evidence as allowing a reasonable mind to accept the conclusions reached by the Commissioner, and where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusions that must be upheld. Fargnoli v. Massarani, 247 F.3d 34, 38 (3d Cir. 2001). A district court, however, exercises plenary review of all legal issues in a case. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).

### B. Determination of Disability

Under the Social Security Act, Disability Insurance Benefits are provided to individuals who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To constitute a disability, the impairment must be "expected to result in death" or "last for a continuous period

9

of not less than 12 months," § 423(d)(1)(A), and be "of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work," § 423(d)(2)(A).

An ALJ determines whether an individual is disabled, and therefore entitled to Disability Insurance Benefits, by using a five-step evaluation process. See 20 C.F.R. § 404.1520(a). A finding by the ALJ at any of the steps that the individual is either disabled or not disabled ends the inquiry. The five stages of inquiry proceed as follows:

*Step 1: Substantial Gainful Activity.* The ALJ must first determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(*i*). Substantial gainful activity is work activity that involves doing significant mental or physical activity for pay or profit. 20 C.F.R. § 404.1572. If the ALJ finds that the claimant is engaging in substantial gainful activity, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(*i*). In the instant case the ALJ found that Plaintiff was not engaged in substantial activity during the August 9, 2002 - April 30, 2004 period at issue here.

*Step 2: Severity of Impairment.* If the claimant is not engaged in any substantial gainful activity, the ALJ must then determine the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(*ii*). An impairment is severe when it significantly limits the individual's physical or mental ability to do basic work activities. § 404.1520(c). If the ALJ finds that an individual's impairment is not severe or has not met the 12 month durational requirement, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(*ii*). Here the ALJ found that Plaintiff's plantar fascitis, hepatitis C, and asthma were severe.

*Step 3: Listed Impairments.* If the ALJ determines that the claimant's impairment is

severe, then the ALJ compares the medical evidence of the impairment to a list of impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P.  20 C.F.R. § 404.1520(a)(4)(*iii*).  The impairments listed in Appendix 1 are presumed severe enough to preclude substantial gainful activity.  If the ALJ finds that the individual's impairment is listed in Appendix 1 and has met the 12 month durational requirement, then the ALJ must find that the claimant is disabled. §404.1520(a)(4)(*iii*).  The ALJ in this case found that Plaintiff's severe impairments were not included among those listed in Appendix 1.

    *Step 4: Past Relevant Work.*  If, however, the individual's impairment is not listed in Appendix 1, then the ALJ must consider whether the claimant possesses the residual functional capacity to do his past relevant work.  20 C.F.R. § 404.1520(a)(4)(*iv*).  Residual functional capacity covers those activities that an individual is still able to do despite the limitations caused by his impairment.  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).  If the ALJ finds that the individual has the capacity to perform past work, then the ALJ must find that the claimant is not disabled.  § 404.1520(a)(4)(*iv*).  Here the ALJ, finding that Plaintiff retained the residual functional capacity to perform light work, concluded that Plaintiff, in spite of her impairments, could perform her past relevant work of airport security scanner, file clerk and security guard and thus was not disabled during the relevant time period.

    *Step 5: Adjustment to Other Work.*  If the claimant cannot perform past work, which is not the situation here, then the ALJ must consider the individual's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work.  20 C.F.R. § 404.1520(a)(4)(*v*).  Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate

area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). If the ALJ finds that the individual has the capacity to adjust to other work, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(v). However, if the ALJ finds that the individual cannot adjust to other work, then the ALJ must find that the claimant is disabled. Id. Because the ALJ found no disability at Step 4, he did not engage in a Step 5 inquiry.

While the individual claimant bears the burden of persuasion on steps one through four, the burden shifts to the Commissioner on the fifth step. At the fifth step, the Commissioner must prove that the individual is capable of obtaining gainful employment other than his past relevant work and that jobs, which the individual can perform, exist in substantial numbers in the national economy. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

**C. The Commissioner's Findings and Conclusions**

In one respect the ALJ's finding at Step 4 is not supported by substantial evidence and, in fact, is inconsistent with a finding found in the body of his decision. The ALJ found in his summary of findings that Plaintiff's past relevant work as airport security screener, file clerk and security guard did not require the performance of work-related activities precluded by her functional capacity. The ALJ found that Plaintiff had the residual functional capacity to perform light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of object weighing up to 10 pounds. 20 CFR § 404.1567(b).

It is clear from the record that working as an airport security screener required Plaintiff to lift far more than 20 pounds. Plaintiff described the job as lifting passenger luggage up onto a ramp and carrying it down the ramp. When the ALJ assumed that the luggage could weight "up

to at least 66 pounds by international convention," Plaintiff responded that "[i]t could be heavier than that." (R. 689). The ALJ in the body of his decision stated that "[a]ccording to the claimant's testimony, her past relevant work as an airport security screener and wheelchair aide at the airport was heavy exertional work." (R. 29). Obviously the kind of screening work that Plaintiff performed at the Newark Airport was not the kind of screening described in the Dictionary of Occupational Titles to which the ALJ referred and relied on in his decision. (R. 30). Thus the ALJ's finding that Plaintiff's past relevant work as airport security screener did not require the performance of work-related activities precluded by her functional capacity is not supported by substantial evidence.

That being said, it remains to be determined whether the ALJ's finding that Plaintiff's past relevant work as file clerk and security guard did not require the performance of work-related activities precluded by her functional capacity was supported by substantial evidence. It is to that question that the balance of this opinion will be directed.

The ALJ's opinion reflects his detailed review of the extensive record in this case. His decision is consistent with conclusions reached by independent medical consultants who reviewed Plaintiff's disability status. His credibility finding is supported by Plaintiff's inconsistent statements at her hearing and when being examined by Dr. Milazzo. Plaintiff, however, has advanced a series of criticisms of the ALJ's findings, asserting his errors preclude a finding that they are supported by substantial evidence. None of these criticisms has merit.

Plaintiff first asserts that the ALJ failed to make the necessary three-step inquiry when determining whether Plaintiff could perform her past relevant work. Plummer v. Apfel, 186 F. 3d 422, 428 (3d Cir. 1999). The ALJ reviewed the extensive medical records, commenting upon

them in detail in his decision. In finding Plaintiff was able to perform light work he cited to 20 C.F.R. §§ 404.1567(b) and 416.967(b) which define light work in terms of the seven strength areas of sitting, standing, walking, lifting, carrying, pushing and pulling, all of which were covered by the medical reports that the ALJ referred to. He found that plaintiff had the residual functional capacity to perform light work and thus considered her ability to perform that work on a continuing basis. Plaintiff testified that her pain had worsened after she started work in May, 2004, and therefore it was less during the limited August 2002 to April 30, 2004 period at issue in this case.

Plaintiff is critical of the ALJ's rejection of certain findings contained in Dr. Milazzo's report. The ALJ provided a reason for this rejection, namely, the failure of Plaintiff to inform Dr. Milazzo that she was currently working on her feet eight hours a day. This supported the ALJ's conclusion that Dr. Milazzo's assessment appeared to be based in large part on Plaintiff's complaints, not objective findings. It justified the ALJ's reliance on the contrary conclusions reached by Dr. Plauka, a consultative examiner, and the State Disability Determination Services consultants.

Plaintiff is critical of the ALJ's evaluation of the effect of the pain about which she testified upon her ability to perform past relevant work. She cites the diagnoses of mononeuritis, plantar fascitis, orthopnea and hypertensive cardiovascular disease. However, it is not the presence of the disease that is determinative, it is whether the presence of the disease causes functional limitations that preclude the performance of any substantial gainful activity. The ALJ provided reasons for according Plaintiff only a limited credibility determination. He relied on the report of Dr. Alan Plauka, a consultative examiner and the State agency consultant.

14

Dr. Plauka, who gave his opinion during the relevant period, that Plaintiff was only mildly limited in prolonged standing, walking and bending. The State agency medical consultant concluded that Plaintiff was able to lift/carry up to twenty pounds occasionally and ten pounds frequently, stand/walk for about six hours in an eight-hour workday. Plaintiff had no postural or manipulative limitations.

Plaintiff criticizes the ALJ for failing to make findings as to the physical and mental demands of Plaintiff's post work - airport security screener, file clerk, and security guard. As stated above, this criticism is well-founded as to the airport security screener position. It is not well-founded as to the other two positions. At Step Four the burden of proof is on the plaintiff. However, in the present case it is not as if the nature of Plaintiff's past relevant work as file clerk and security guard is unusual or uncommon. The functions of a file clerk, and security guard are generally known by the world at large. The ALJ stated that Plaintiff listed on hearing forms that she worked as a file clerk from 1997 to 198 and reported working in this position from 1995 to 1998. Plaintiff failed to show that any of her limitations would prevent her from performing this job, the lightest post relevant work that the ALJ found she could perform. The Commissioner can take administrative notice of reliable job information in government publications. One such publication describes the job of file clerk as requiring a light exertional capacity. U.S. Department of Labor, Dictionary of Occupational Titles 176 (4th ed. rev. 1991). Plaintiff described in her testimony what a security guard does, having served in such a position after her period of disability ended.

Thus the ALJ made sufficient findings of fact regarding both Plaintiff's residual functional capacity and the requirements of her past jobs to support his conclusion that she was

capable of performing those jobs.

Plaintiff asserts that the ALJ failed to evaluate Plaintiff's subjective complaints of pain and other symptoms. Evaluating the degree of a plaintiff's asserted pain is always a difficult task. The plaintiff's subjective complaints must be given serious attention even when not supported by objective evidence. Ventura v. Shalala, 55 F. 3d 900 (3d Cir. 1995).

The ALJ reviewed the totality of the evidence as it reflected the degree of Plaintiff's pain. Her daily activities included housework, using public transportation, baby sitting for a three year old nephew and taking walks. The ALJ considered the work that Plaintiff was then performing and the pain which Plaintiff endured while performing that work. According to Dr. Milazzo's report she then had "increased pain with weightbearing and walking, at times limps. She does not use a cane. She has increased pain going up and down stairs. She goes one step at a time. She has problems using public transportation getting into and out of the bus." (R. 496). It was perhaps this evidence that led the ALJ to comment in reference to her current work: "The claimant was, in fact, asked if her condition had improved and she stated that it had gotten worse." (R. 29). If the increased pain did not prevent her from performing her post-relevant work as a security guard, lesser pain would not have prevented her from performing in a security guard position during the relevant period.

Plaintiff stopped working in August 2002, not because of disability, but because the company for which she was a screener and then a wheelchair pusher lost its contract. (R. 688). Her leg had started bothering her at that time, but she applied for unemployment insurance stating that she was ready for work. (Id.). Thus Plaintiff's window of claimed disability (August 2002 to May 2004) was a narrow one.

16

Reference has already been made to reasons why the ALJ was justified in finding Plaintiff's description of her pain and its effects to be not totally credible. The ALJ considered and commented upon the evidence that Plaintiff asserts he did not take into account, such as Dr. Plauka's impression that x-rays of the lumbosocral spine revealed marked disc space narrowing at L4-5 and L5-S1 (R. 23) and the side effects of Plaintiff's medications. (R. 21-26). When considering Plaintiff's credibility the ALJ cited, as he was entitled to do, the evidence of Plaintiff's non-compliance with treatment directions. On occasion Plaintiff justified non-compliance, asserting an inability to pay. In other instances no justification was advanced. There was sufficient evidence in the record to support the ALJ's finding that Plaintiff's complaints about the extent of her pain were not totally credible.

### III. CONCLUSION

With the exception fo the ALJ's finding that Plaintiff's past relevant work as airport security screener did not require the performance of work-related activities precluded by her functional capacity, the ALJ's findings were supported by substantial evidence. That left two categories of past-relevant work- file clerk and security guard - that were not precluded by Plaintiff's functional capacity. Consequently, the ALJ's finding that Plaintiff was not under a disability at any time during the relevant period will be affirmed. The court will file an order implementing this opinion.



                     *s/ Dickinson R. Debevoise*
                     DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: December 9, 2008